SCHUMANN, Appellant,

v.

SCHUMANN et al., Appellees.

[Cite as *Schumann v. Schumann*, 190 Ohio App.3d 824, 2010-Ohio-5472.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93382.

Decided Nov. 10, 2010.

826

Zukerman, Daiker & Lear Co., L.P.A., Paul B. Daiker, and Larry W. Zukerman, for appellant.

Stafford & Stafford Co., L.P.A., Joseph G. Stafford, Nicholas M. Gallo, Michele A. Kalapos, and Gregory J. Moore, for appellee.

ANN DYKE, Judge.

{¶ 1} Appellant Terrie S. Schumann, now known as Terrie McKelvey, appeals from the order of the trial court entered in connection with numerous postdivorce decree motions. Cross-appellee Michael A. Schumann challenges the amount of attorney fees that he was awarded in connection with his motions. For the reasons set forth below, we vacate that portion of the May 6, 2009 order that modified the allocation of parental rights and that portion that required appellant to deliver two statues to appellee. We affirm the order of the trial court in all other respects and remand for the trial court to vacate those two provisions.

{¶ 2} The parties were married on January 2, 1982, and had two daughters. The older daughter, who is not a subject of the instant matter, was born on April 19, 1984, and the younger daughter was born on April 19, 1989. Appellant filed for divorce against appellee on December 10, 1998. Appellee filed an answer and counterclaim on or about December 14, 1998, and the court issued its final judgment entry of divorce on September 18, 2003. See *Schumann v. Schumann*, Cuyahoga App. Nos. 83404 and 83631, 2005-Ohio-91, 2005 WL 77087.

{¶ 3} The trial court designated appellant as the residential parent and legal custodian of the younger daughter, ordered appellee to pay $4,000 per month for child support until her emancipation, ordered appellee to pay $40,000 toward appellant's attorney fees, ordered appellant to pay one-half of the debt from

Provident Bank, and ordered that the personal property in the marital residence be equally divided between the parties. The trial court also concluded that I. Schumann & Company and related entities were appellee's separate property based upon an agreement dated December 29, 1981.

{¶ 4} The parties filed numerous postdecree motions, and on June 17, 2004, the younger daughter, then age 15, left appellant's residence and moved in with appellee. On August 2, 2004, appellee filed a petition for a domestic violence civil protection order, "due to issues between [appellant] and [the younger daughter]." On August 24, 2004, the trial court issued a journal entry that stated as follows:

{¶ 5} "The petition for domestic violence is dismissed upon the terms and conditions set forth herein.

{¶ 6} "1. Plaintiff and defendant are each designated as residential parents and legal custodians of [the younger daughter].

{¶ 7} " * * *

{¶ 8} "3. Every Monday and Tuesday from after school to 8:30 p.m. Plaintiff shall pick the child up directly from school or from defendant's home. * * * Every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. * * * Holidays will be alternated [and] the child shall be in the possession of the defendant at all other times."

{¶ 9} In October 2004, appellee filed a motion to terminate child-support payments and to determine overpayments and arrearages, noting that both parents had been designated as the residential parents and legal custodians of the younger daughter, who turned 18 on April 19, 2007, and graduated from high school in June 2007. Appellee filed a motion to modify child support on October 31, 2005.

{¶ 10} On January 28, 2005, appellee filed a motion to show cause and for a temporary restraining order. He asserted that appellant had not complied with the terms of the parties' divorce decree that required her to pay one-half of the marital debt to Provident Bank. He additionally asserted that appellant had not complied with her duty to equally divide household items from the marital residence that was sold in September 2003. The parties' motions were heard on various dates in 2008. Essentially, appellant asserted that child support continued to accrue and that the trial court was without authority to modify support orders in light of the younger daughter's emancipation. Appellee asserted that the child-support obligation terminated when the girl moved in with him and became emancipated and that he has overpaid his child-support obligation.

{¶ 11} On May 6, 2009, the trial court determined that modification of parental rights was in the "best interests of the minor child," and granted it. The trial court further held that the child-support order of $4,000 per month was premised,

in part, upon the girl attending Hawken School and that she had not attended Hawken School subsequent to June 2004. The trial court ruled that appellant was not entitled to receive child support following August 24, 2004, the date on which the younger daughter moved in with appellee. At this point, according to the trial court, appellant was no longer the primary residential parent and "knew or should have known that child support payments may terminate when there is a change of legal custody." The trial court further noted that although the August 24, 2004 entry did not "comply with R.C. 3109.04(A)(1) in terms of designating a residential parent and legal guardian for the younger daughter and it is also not an order for shared parenting," it was a "hybrid" order through which appellee waived the termination of her designation as sole primary residential parent and legal custodian.

{¶ 12} The trial court next determined that it was in the child's best interests to order appellant to pay child support to appellee from August 24, 2004, to the date of her 18th birthday and ruled that appellant owed appellee $10,083.87. The trial court held that appellant "waived any objection to award child support by entering into an agreement to defer all other motions to December of 2004 after agreeing that [she] would live primarily with her father * * * and that child support was at issue when she signed the journal entry."

{¶ 13} The trial court additionally concluded that although appellee was in arrears in connection with spousal-support payments, the arrearage amount would be reduced to $88,333.57 to reflect his child-support overpayment. Finally, the trial court held that appellant failed to pay appellee $60,000, her share of a loan from Provident Bank, and that appellant owed appellee $77,300 for household property, plus $6,500 for his attorney fees.

{¶ 14} Appellant challenges these provisions in seven assignments of error, and appellee cross-appeals.

## THE APPEAL

{¶ 15} In her first assignment of error, appellant asserts that the trial court was without authority to enter a modification of parental rights and responsibilities in May 2009, because the younger daughter was emancipated at the time, as well as at the time of the hearing. In opposition, appellee asserts that the modification was in the child's best interests and merely reiterated the terms of the August 2004 entry.

{¶ 16} In *DiFranco v. DiFranco*, Cuyahoga App. No. 87269, 2006-Ohio-5010, 2006 WL 2777522, ¶ 17, this court stated:

{¶ 17} "It is well-settled that a court generally lacks subject matter jurisdiction to modify parental rights and responsibilities after a child has been emancipated.

*State ex rel. Mandich v. Mandich* (Aug. 20, 1997), Medina App. No. C.A. 2622–M, [1997 WL 537670,] citing *Miller v. Miller* (1951), 154 Ohio St. 530 [43 O.O. 496], 97 N.E.2d 213, paragraph two of the syllabus; *Rohrbacher v. Rohrbacher* (1992), 83 Ohio App.3d 569, 575, 615 N.E.2d 338; *Maphet v. Heiselman* (1984), 13 Ohio App.3d 278, 279 [13 OBR 343], 469 N.E.2d 92."

{¶ 18} Similarly, in *Berthelot v. Berthelot,* Summit App. No. 23561, 2007-Ohio-3884, 2007 WL 2192963, the court held that a court generally lacks subject-matter jurisdiction to modify parental rights and responsibilities after a child has been emancipated, and stated:

{¶ 19} "In its decision, the magistrate found that the child at issue had attained the age of majority and had graduated from high school. We note as well that this Court previously recognized that only two children were unemancipated when Appellant filed her motion to modify * * *. Accordingly, the trial court erred in using three unemancipated children on the worksheet."

{¶ 20} In this matter, the trial court determined that modification of parental rights was "in the best interests of the minor child," because she had become integrated into the father's family and was alienated from her mother, and an order of counseling was ineffective. Because the younger daughter was no longer a "child," but was emancipated, the trial court was without subject-matter jurisdiction to modify the order of parental rights as of the May 6, 2009 journal entry.

{¶ 21} We next consider the import of the August 24, 2004 entry, and whether it constituted a modification through which appellant waived her right to continue as sole primary residential parent and legal custodian and effectively designated appellee the residential parent and legal custodian for the younger daughter. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461. Accord *Chubb v. Ohio Bur. of Workers' Comp.* (1998), 81 Ohio St.3d 275, 690 N.E.2d 1267. Waiver may occur by words or by conduct. *State ex rel. Ford v. Cleveland Bd. of Edn.* (1943), 141 Ohio St. 124, 25 O.O. 241, 47 N.E.2d 223. A waiver partakes of some of the nature of estoppel and may be enforced by the person having a duty to perform, who has changed his position as a result of the waiver. *Andrews v. Teachers Retirement Sys. Bd.* (1980), 62 Ohio St.2d 202, 205, 16 O.O.3d 240, 404 N.E.2d 747.

{¶ 22} In this matter, we note that the August 24, 2004 journal entry did not set forth a determination from the trial court regarding the "best interests" of the child. It did not allocate the parental rights and responsibilities for the care of the child primarily to one of the parents, and it did not designate that parent

as the residential parent and the legal custodian of the child. The document simply stated that appellant and appellee "are each designated as residential parents and legal custodians of [the younger daughter]." This entry is plainly a temporary document put into place pending further orders of the court and therefore cannot be construed as an intentional relinquishment or abandonment of appellant's existing rights.

{¶ 23} The first assignment of error is well taken.

{¶ 24} In the second assignment of error, appellant maintains that the trial court erred in deciding child-support-related issues after the younger daughter became emancipated. Appellant contends that the original child-support order should have remained in effect even after the child moved in with appellee because appellee refused to return her to appellant's home, filed a "spurious domestic violence action" against appellee that was later dismissed, and also refused to comply with the new visitation schedule set forth in the August 24, 2004 order. In addition, appellant stated that she continued to maintain housing with the intention that the younger daughter would return to her home. In opposition, appellee maintains that because the motions at issue were filed during the child's minority, and because the trial court issued the August 2004 entry reflecting the parties' agreed modification of parental rights and responsibilities during her minority, the trial court properly entered the May 2009 rulings.

{¶ 25} In analyzing the court's order, we note that the issue whether a prior order for child support should be modified is within the sound discretion of the trial court, and its decision in that regard may be reversed on appeal only for an abuse of that discretion. *Woloch v. Foster* (1994), 98 Ohio App.3d 806, 810, 649 N.E.2d 918. A trial court abuses its discretion when it makes an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. In order to justify the modification of an existing support order, the moving party must demonstrate a substantial change of circumstances that renders unreasonable an order that once was reasonable. *Carson v. Carson* (1989), 62 Ohio App.3d 670, 673, 577 N.E.2d 391, quoting *Bright v. Collins* (1982), 2 Ohio App.3d 421, 425, 2 OBR 514, 442 N.E.2d 822.

{¶ 26} With regard to the termination of support payments after the child stopped living with appellant, we note that in *Hoffmann v. Hoffmann* (1972), 32 Ohio App.2d 186, 61 O.O.2d 205, 289 N.E.2d 397, the court held that when the circumstances existing at the time of a divorce decree ordering monthly child-support payments cease to exist, the legal obligation to make those payments terminates at the same time and not when it is cancelled of record. Generally, the modification ordered may be made retroactive to the date that a

motion seeking it was served on the obligor. *Hamilton v. Hamilton* (1995), 107 Ohio App.3d 132, 667 N.E.2d 1256; *Tobens v. Brill* (1993), 89 Ohio App.3d 298, 624 N.E.2d 265; *Osborne v. Osborne* (1992), 81 Ohio App.3d 666, 611 N.E.2d 1003. "Absent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested." *State ex rel. Draiss v. Draiss* (1990), 70 Ohio App.3d 418, 421, 591 N.E.2d 354.

{¶ 27} In this matter, as we noted previously, we have determined that the August 24, 2004 order stated that "each [party] designated as residential parents and legal custodians of [the younger daughter]." As of this date, the child had moved into appellee's house. Court-ordered counseling and companionship did not take place, and the evidence clearly indicated that she resided exclusively with appellee as of this time. In this connection, we agree with the trial court's determination that appellant's reliance upon *DiFranco v. DiFranco*, Cuyahoga App. No. 87269, 2006-Ohio-5010, 2006 WL 2777522, is misplaced. In *DiFranco*, this court held that the trial court did not err in refusing to terminate child-support payments as of 1999 when the child moved into the father's house but spent an equal amount of quality time with both her parents and did not primarily reside with the father until 2002. Clearly, in this matter, the child resided exclusively with appellee as of August 2004, and the record contains conflicting information as to whether she refused to speak with appellant, or appellant refused to deal with the child unless she agreed to move back into her home, but does not indicate that appellee barred the child from visiting with appellant. Moreover, the child-support order of $4,000 per month was premised, in part, upon the child attending Hawken School, and she did not attended Hawken School subsequent to June 2004. We therefore cannot conclude that the trial court erred in terminating appellee's child-support obligation as of August 24, 2004.

{¶ 28} With regard to the decision to require appellant to pay child support to appellee, the record indicates that she was clearly on notice that the issue of child support would be revisited after the child moved in with appellee. Moreover, the trial court correctly determined that "[w]hile Michael did and could afford to pay for [the younger daughter's] expenses, he is entitled to the receipt of child support to sustain the same standard of living for [her]." In addition, the record supports the trial court's calculations in connection with the support order.

{¶ 29} The second assignment of error is without merit.

{¶ 30} In her third assignment of error, appellant complains that the trial court erred in calculating the child-support and spousal-support arrearages and overages. Appellant asserts that because appellee had a child-support arrearage, and the younger daughter had become emancipated as of the date of

the trial court's hearing on the motion to modify, the trial court had jurisdiction to enforce, but not modify, the child-support orders.

{¶ 31} A trial court that enters a decree for child support has continuing jurisdiction over matters relating to child support. *Jefferies v. Stanzak* (1999), 135 Ohio App.3d 176, 733 N.E.2d 305. The trial court may modify it as the parties' changing circumstances require. Id. Although a trial court may not modify child support when the movant has made the request *after* the child has reached the age of majority, *Rohrbacher,* 83 Ohio App.3d 569, 615 N.E.2d 338; *Slowbe v. Slowbe,* Cuyahoga App. No. 83079, 2004-Ohio-2411, 2004 WL 1068418; *Gilliam v. DeLauder,* 151 Ohio App.3d 640, 2003-Ohio-693, 785 N.E.2d 482, the trial court has jurisdiction to modify its order until the child is emancipated, may do so for a demonstrated change of circumstances, and may order the modification be made retroactive to the date that a motion seeking it was served on the obligor. *Hamilton v. Hamilton,* 107 Ohio App.3d 132, 667 N.E.2d 1256; *State ex rel. Mandich v. Mandich* (Aug. 20, 1997), Medina App. No. 2622–M, 1997 WL 537670. As was cogently explained in *Absalom v. Absalom* (Nov. 6, 1991), Summit App. No. 15122, 1991 WL 232291, at *4:

{¶ 32} "If we accepted [appellant's] position, parties would be discouraged from seeking child support modification as the child nears emancipation. Inequities would also arise between similar cases taking different amounts of time to reach a final judgment. A movant in a child support modification case should not be penalized by such fortuitous events as the docket of the court or delays caused by the opposing party. It is not equitable that a movant in a support modification case, with a legitimate basis for the motion, be penalized by the emancipation of the child during the pendency of the case. Therefore we find our holding in *Carson* to be sound even when the child becomes emancipated prior to the court's final judgment."

{¶ 33} Moreover, this court has previously held that spousal-support and child-support awards may be offset against one another. See *Schumann v. Schumann,* 2005-Ohio-91, 2005 WL 77087.

{¶ 34} The third assignment of error is without merit.

{¶ 35} For her fourth assignment of error, appellant complains that the trial court erred in ordering that she pay appellee $77,300 for household furnishings. Appellant argues that appellee waived his claim to these items because she urged him to obtain these items from the home before it was sold in September 2003, but he did not do so, and he waited 17 months to raise this issue. According to appellant, the claim for these items is untimely and is waived. In opposition, appellee asserts that his motion was filed immediately after the

parties' appeal was decided. He further asserts that appellant's claim that she gave away many of the disputed items lacks credibility.

{¶ 36} Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328, quoting *Smith v. Smith* (1957), 107 Ohio App. 440, 8 O.O.2d 424, 146 N.E.2d 454. Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim. Id. See also *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

{¶ 37} "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

{¶ 38} In this matter, appellant presented evidence that appellee knew that the marital home was being sold and he ignored her repeated requests to retrieve personal property. Nonetheless, she did not inform him that his share of the property would be donated or given away if he did not contact her. Further, the record indicates that the property division remained an issue in the direct appeal, so we cannot accept appellant's claim that appellee was unconcerned with the household goods for 17 months after the marital home was sold. Accordingly, we cannot conclude that the trial court erred in rejecting the claims of laches and waiver herein.

{¶ 39} This assignment of error is overruled.

{¶ 40} For her fifth assignment of error, appellant complains that the trial court erred in ordering her to pay $6,500 toward appellee's attorney fees because no fee statement was submitted in support of this amount.

{¶ 41} An attorney seeking fees has the burden of introducing sufficient evidence of his or her services and the reasonable value thereof. *In re Verbeck's Estate* (1962), 173 Ohio St. 557, 559, 20 O.O.2d 163, 184 N.E.2d 384. Pursuant to Sup.R. 71, "[a]ttorney fees in all matters shall be governed by Rule 1.5 of the Ohio Rules of Professional Conduct," which sets forth the factors that must be considered in determining the reasonableness of the requested fees.

{¶ 42} In this matter, the record demonstrates that appellee's counsel did in fact file a fee statement on February 13, 2009. Appellant filed a motion to strike

this document, and the trial court denied that motion. This assignment of error therefore lacks support in the record and is without merit.

{¶ 43} In her sixth assignment of error, appellant raises the related claim that the trial court erred in ordering her to return two statues to appellee because these items were not mentioned in the trial court's original divorce decree. In opposition, appellee asserts that the award is proper since appellant essentially kept all of the household goods.

{¶ 44} Pursuant to R.C. 3105.171(I), a trial court does not have jurisdiction to modify the division of property in a properly filed divorce decree. The trial court has broad discretion in clarifying ambiguous language, however.

{¶ 45} In this matter, we conclude that the trial court's order with regard to the statues is a modification and not a clarification of an ambiguity, since the statues were not mentioned in the original decree. Accordingly, this portion of the May 6, 2009 order is vacated.

{¶ 46} In the seventh assignment of error, appellant complains that the trial court erred in finding her in contempt of court for failing to pay her portion of the $120,000 debt to Provident Bank because, at the time the motion to show cause was filed, appellee had not yet paid his share of this debt, and appellant had no documentation identifying the debt. She additionally complains that the trial court erroneously ordered that appellee's 2003 obligation to pay $40,000 toward appellant's attorney fees be offset against appellant's payment of her share of the debt, because, she claims, she is entitled to statutory interest on the unpaid attorney-fee award.

{¶ 47} The decision to permit a setoff of judgments is within the trial court's discretion. *Thomas v. Papadelis* (1984), 16 Ohio App.3d 359, 16 OBR 413, 476 N.E.2d 726; *Southside Serv. Co., Inc. v. Monarch Steel Co.* (April 2, 1992), Cuyahoga App. No. 60210, 1992 WL 67106.

{¶ 48} We find no abuse of discretion in this matter. Both sums were contained in the parties' original divorce decree and were rendered at the same time. The trial court properly offset each debt against the other in order to determine the parties' actual liabilities.

## CROSS–APPEAL

{¶ 49} For his cross-appeal, appellee asserts that the trial court erred in failing to award him all of his claimed attorney fees and litigation expenses of $36,592.50, as the bulk of this amount was incurred in appellee's defense of appellant's baseless motions and his efforts to enforce prior orders of the trial court.

{¶ 50} We review a trial court's determination regarding attorney fees for an abuse of discretion. *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error in judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 51} In this matter, the record demonstrates that both appellee and appellant have filed many, many motions concerning a vast array of issues and have declined numerous attempts to settle their disputes. This court therefore cannot accept appellee's claim that substantial attorney fees were incurred mainly to defend against the actions of appellant and to enforce his rights under the decree. Moreover, applying the factors set forth in Rule 1.5(a) of the Ohio Rules of Professional Conduct, we find no abuse of discretion in connection with the attorney-fee award of $6,500, and that order is hereby affirmed.

{¶ 52} The portion of the May 6, 2009 order of the trial court that modified the parties' parental rights and the portion awarding appellee two statues are hereby vacated. We affirm the order of the trial court in all other respects and remand for the trial court to vacate those two provisions.

Judgment accordingly.

Rocco, P.J., and Stewart, J., concur.