[Cite as *Buskirk v. Buskirk*, 2023-Ohio-70.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AUDREY BUSKIRK,                    :

    Plaintiff-Appellee,        :

                           No. 111399

    v.                         :

ERIK K. BUSKIRK,                   :

    Defendant-Appellant.       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 12, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-379187

---

### *Appearances:*

Alan H. Kraus, *for appellee.*

Erik K. Buskirk, *pro se.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Erik K. Buskirk ("Husband"), pro se, appeals from the trial court's judgment granting a divorce to him and Audrey Buskirk ("Wife"). We affirm.

## I. Background

{¶ 2} On November 12, 2019, Wife filed her complaint for divorce from Husband. Trial commenced in January 2022.

{¶ 3} Prior to trial, the parties stipulated that (1) they were married on July 4, 2009, in Louisiana; (2) there were two minor children born of the marriage; (3) the parties had lived separate and apart for more than one year; (4) the appraisal of the marital home prepared by James P. Rosenblatt (Wife's exhibit No. 28) was authenticated and admissible as evidence; and (5) the financial records identified in Wife's exhibit list were authentic and did not require a custodian of records.

{¶ 4} Husband offered no documentary evidence at trial. Wife's 28 exhibits, which included the parties' 2018, 2019, and 2020 joint tax returns, the real estate appraisal for the marital home, various credit card statements, 401(k) account statements, and the parties' financial disclosure statements with affidavits, were admitted into evidence.

{¶ 5} Both Husband and Wife testified at trial that the marital residence located on Traynham Road in Shaker Heights was acquired during the marriage with marital funds. Neither party claimed in testimony nor in their financial disclosure statements that any portion of the home was premarital or separate property. Wife testified that Husband had sole possession of the home after she moved out on July 17, 2019, and Husband testified that he made the mortgage payments after Wife moved out. Wife's exhibit Nos. 16 and 28 demonstrated that

the home was appraised at $240,000 as of July 21, 2021, and there was an outstanding mortgage of $137,507.36 on the home as of November 11, 2021.

{¶ 6} The trial court's judgment entry of divorce found that the parties had entered into an agreed judgment entry regarding shared parenting. Accordingly, the trial court ordered that the parties share the rights and responsibilities for the care of the children in accordance with the approved shared parenting plan. The trial court further found that the fees and expenses for the guardian ad litem appointed to the case for the children totaled $3,960. The trial court found that Wife had posted a $750 bond as payment for the guardian ad litem fees and made additional payments of $435 and that Husband had posted the initial bond of $750 but not made any additional payments. Accordingly, the trial court ordered Wife to pay an additional $795 to the guardian ad litem and Husband to pay $1,230.

{¶ 7} With respect to the division of marital property, the court found that the parties had divided their household goods and furniture when Wife left the marital home. The trial court ordered that although Husband made an estimated 30 payments toward the mortgage and paid all expenses associated with the home after Wife left the residence, the home was to be sold and the proceeds divided equally between the parties. The court ordered that Wife's Kia Sorento was her separate property and Husband's 2014 Cadillac XTS was his separate property.

{¶ 8} With respect to the parties' outstanding debt, the trial court found that

[Wife] testified at trial that the parties had significant marital credit card debt at the time of separation, around $28,000. [Wife] further testified that she attempted to divide that marital debt as equally as possible and took between $15,000 and $16,000 of marital credit card debt with her upon separation. [Wife] testified that the Chase Visa Amazon account had a zero balance on the date of her exodus from the marital home. [Wife] testified that the Chase Southwest card was opened during the marriage for purposes of managing marital finances. The Court found [Wife's] testimony to be credible.

[Wife] presented testimony that she was unaware of the KeyBank line of credit that was opened during the marriage. [Wife] testified that [Husband] advised her this money was for his attorney fees incurred during the domestic violence charge from 2018. The Court finds that [Wife] was the victim of [Husband's] 2018 domestic violence charge. [Husband] testified that only about $3,000 went toward attorney fees. [Husband testified that the other money was used for marital living expenses but was unable to testify as to what marital expenses, or how the money was spent. The Court finds [Wife's] testimony regarding this account to be credible. The Court finds that [Husband] lacked candor in his testimony and failed to present evidence supporting his claims.

[Husband] presented no exhibits or evidence at trial as to his current financial position, current credit card indebtedness, or savings or assets. Testimony from [Husband] at trial as to the finances was dubious. [Wife's] testimony was consistent with exhibits presented and was found to be credible.

{¶ 9} The trial court ordered that Wife would retain her Capital One credit card ending in 4766 with a $0 balance as of January 26, 2022, and her KeyBank Mastercard account ending in 1086 with a balance of $5,530.48 as of June 15, 2021. The court ordered that Husband would retain his Chase Visa Amazon account ending in 4299 with a balance of $6,500 as of January 24, 2022; his Chase Southwest account ending in 8424 with a balance of $3,690.57 as of August 10, 2019; his Wells Fargo account ending in 8307 with a balance of $7,000 as of January 24, 2022; and his American Express account with an unknown account number and

a balance of $500 as of January 24, 2022. In addition, the court ordered that Husband would retain the KeyBank line of credit account ending in 2027 with a balance of $8,006.19 as of February 7, 2019, his Navient student loan debt of $150,000 (which Husband testified was acquired prior to the marriage), and any other credit cards or lines of credit in his name.

{¶ 10} The court found that the parties had four retirement accounts and ordered that the marital portion of each account was to be divided equally between Husband and Wife.

{¶ 11} Finally, the court found, after considering the requirements of R.C. 3105.171(E), that although the property division was not equal, it was equitable because (1) Husband admitted at trial that he had liquidated a 401(k) account with a balance of $23,650 as of June 3, 2021, in direct violation of the court's mutual restraining order and without consulting with Wife;[1] and (2) Husband testified that he borrowed on the KeyBank line-of-credit account to pay for expenses associated with his 2018 domestic violence case in Shaker Heights Municipal Court, and such debt was not marital debt despite Husband's testimony that it was Wife's fault that he had been charged with domestic violence. This appeal followed.

---

[1] R.C. 3105.171(E)(4) states that "[i]f a spouse has engaged in financial misconduct, including * * * the dissipation * * * of assets, the court may compensate the offended spouse with a distributive award or with a greater amount of marital property."

## II. Law and Analysis

### A. Division of Marital Debt and Assets

{¶ 12} In his first assignment of error, Husband contends that the trial court erred "in assigning 90% of the marital debt to [him] even though both parties are 50/50 financial partners." Husband takes issue with the trial court's determination that the debt on certain credit cards was marital debt rather than Wife's personal debt. He also contends that "all the cards in default were assigned to him" and "all the bad debt [was] placed on [him] so that he cannot refinance his children's home, and [Wife] can take the kids to Texas." (Husband's brief, p. 12). In his second assignment of error, Husband contends that the trial court erred in designating premarital funds in one of the retirement accounts (the AIG Rollover IRA account) as marital property.

{¶ 13} R.C. 3105.171(C)(1) mandates an equal division of marital property, but if an equal division is inequitable, the court must divide the marital property equitably. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. We review a trial court's division of marital property for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). We likewise review a trial court's division of debt under an abuse of discretion standard. *Trolli v. Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 32. An abuse of discretion occurs when the court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 14}** When distributing property in a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. *Comella v. Comella*, 8th Dist. Cuyahoga No. 90969, 2008-Ohio-6673, ¶ 38, citing R.C. 3105.171(B). The determination of whether property is marital or separate is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Kobal v. Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, ¶ 27 (8th Dist.). Once the characterization of the property is made, the reviewing court will not disturb the trial court's distribution of the property absent an abuse of discretion. *Id.*; *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8.

**{¶ 15}** Property currently owned by either or both of the spouses and property acquired during a marriage is generally presumed to be marital property unless it can be shown to be separate. *Herrera v. Phil Wha Chung*, 8th Dist. Cuyahoga No. 109793, 2021-Ohio-1728, ¶ 38, citing *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 18. Separate property includes "any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." *Trolli* at ¶ 33, citing R.C. 3105.171(A)(6)(a)(ii). "'Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.'" *Id.*, quoting *Lucas v. Lucas*, 7th Dist. Noble No. 382, 2011-Ohio-6411, ¶ 33.

**{¶ 16}** We find no abuse of discretion in the trial court's allocation of the parties' debt between Husband and Wife. The trial court found that Husband

presented no exhibits or evidence at trial as to his current financial position, current credit card indebtedness, or savings or assets; all of the evidence came from Wife's exhibits and testimony. The trial court also found that Husband "lacked candor in his testimony" and his testimony at trial about the parties' finances was "dubious." It is for the trial court to resolve disputes of fact and weigh the credibility of the witnesses. *Pruitt v. Pruitt*, 8th Dist. Cuyahoga No. 84335, 2005-Ohio-4424, ¶ 32, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990).

{¶ 17} Our review of the record gives us no reason to overrule the court's factual or credibility determinations. There was ample competent, credible evidence to support the trial court's allocation of the parties' debt. In light of Husband's lack of candor, and the trial court's finding that Wife's testimony was credible and consistent with the exhibits presented, we find no abuse of discretion in the trial court's allocation.

{¶ 18} Furthermore, there is no support in the record for Husband's claim that he was assigned 90 percent of the debt or that he was assigned all "the bad debt so that he cannot refinance his children's home and [Wife] can take the kids to Texas." Husband offered no evidence whatsoever at trial regarding his inability to refinance the mortgage on the marital home in light of his outstanding debt nor about Wife's alleged intention to take the children to Texas.

{¶ 19} With respect to the retirement accounts, the trial court likewise did not abuse its discretion in ordering that the marital portion of the parties' retirement accounts was to be divided equally between the parties. Husband contends that the

trial court's order was erroneous because the funds in the AIG Rollover IRA account are "100 percent premarital retirement funds" earned through his employment prior to the marriage.

{¶ 20} It is well settled that the party contending that an asset is separate property has the burden of proving that claim by a preponderance of the evidence. *Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487 at ¶ 33, citing *Hall v. Hall*, 2d Dist. Greene No. 2013 CA 15, 2013-Ohio-3758, ¶ 14. "Oral testimony as evidence, without corroboration, may or may not satisfy the burden." *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 23 (2d Dist.). We find no abuse of discretion in the trial court's equal allocation of the retirement funds because Husband did not meet his burden of proof in demonstrating that the AIG Rollover IRA account was his separate property.

{¶ 21} Initially, we note that Husband made no claim of separate property in his Financial Disclosure Statement filed with the court prior to trial. In fact, under Section D of the statement, which provides an opportunity to list "separate property claims as defined in Ohio Revised Code 3105.17(A)(6)(a)," including "property owned before marriage," Husband affirmatively stated he had "$0.00" in separate property claims. Husband's accompanying affidavit averred that the information set forth in Disclosure Statement was "true, complete, and accurate."

{¶ 22} At trial, Wife testified that Husband had an account with the Louisiana Teachers' Union prior to the parties' marriage in 2009 but that she did not know the amount Husband contributed to the AIG Rollover IRA account prior

to the marriage. Husband testified that some unspecified amount of the account was premarital, the account was rolled over several times during the marriage, and the parties withdrew funds from the account during the marriage.

{¶ 23} The comingling of separate property with other property does not destroy the identity of separate property as separate property except when the separate property is not traceable. *Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, at ¶ 21, citing R.C. 3105.171(A)(6)(b). A party who claims that property is traceable to his separate property has, as with any separate property claim, the burden of proving traceability by a preponderance of the evidence. *Id*. at ¶ 23.

{¶ 24} Our review of the record demonstrates that Husband offered no testimony and provided no exhibits regarding what, if any, portion of the AIG Rollover IRA account was premarital in nature. Likewise, although he testified that some monies were withdrawn from the account during the marriage, Husband did not specify how much was removed from the account.

{¶ 25} Accordingly, we find no abuse of discretion in the trial court's finding that "[Husband] failed to provide any testimony or exhibits that ascertain what portion [of the AIG Rollover IRA] was premarital in nature." Because Husband did not meet his burden of demonstrating by a preponderance of the evidence that any portion of the AIG Rollover IRA was separate property, the trial court did not abuse its discretion in dividing the account equally between the parties.

{¶ 26} To summarize, we find no abuse of discretion in the trial court's allocation of debt between Husband and Wife nor in its order that the marital portion of the retirement accounts, including the AIG Rollover IRA, be divided equally between the parties. The first and second assignments of error are therefore overruled.

### B. Child Support Order

{¶ 27} In his third assignment of error, Husband contends that the trial court erred in ordering that he pay Wife $1,048.96 monthly child support.

{¶ 28} A trial court has broad discretion to calculate child support and, absent an abuse of discretion, an appellate court will not disturb a child support order. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1008 (1997). Challenges to factual determinations upon which the child support order is based are reviewed using the "some competent credible evidence" standard. *Jajola v. Jajola*, 8th Dist. Cuyahoga No. 83141, 2004-Ohio-370, ¶ 8.

{¶ 29} Husband first contends that the child support computation worksheet relied upon by the court to calculate child support was incorrect because it calculated Wife's annual income using an average of her last three years' earnings but used only one year of his annual salary to calculate his salary. We see no error. Wife testified at trial that her annual wages are $64,000 and Husband testified that his annual salary was $100,000, both of which were used on the child support computation worksheet as Wife's and Husband's annual incomes. We see nothing

to indicate that Wife's annual wages were calculated using a three-year average wage.

{¶ 30} Husband also complains that the trial court's child support order was an abuse of discretion because he (1) lost his job making $100,000 a year and now works at only a minimum wage job; (2) is behind on paying his electric, gas, and water bills; (3) takes care of the children 60 percent of the time; and (4) pays 100 percent of the fees for his children's extracurricular activities. Again, we find no abuse of discretion in the trial court's order. Husband was employed at the time of the divorce, earning $100,000 per year. The trial court's support order was calculated based on Husband and Wife's earnings at that time, which they both testified to at trial. Accordingly, there was competent, credible evidence to support the trial court's order. Furthermore, there was no testimony whatsoever from either Husband or Wife at trial regarding the children's extracurricular activities or associated fees for those activities and, accordingly, there is nothing in the record to support Husband's assertion that the children are engaged in extracurricular activities and that he pays 100 percent of the cost for the children's activities. The third assignment of error is overruled.[2]

---

[2] With respect to Husband's assertion that he is now employed at a minimum wage job and no longer makes $100,000 per year, we note that a trial court that enters a decree for child support has continuing jurisdiction over matters relating to child support and can modify its order as the parties' changing circumstances require. *Schumann v. Schumann*, 190 Ohio App.3d 824, 2010-Ohio-5472, 944 N.E.2d 705, ¶ 31 (8th Dist.). In order to justify the modification of an existing support order, the moving party must demonstrate a substantial change of circumstances that renders unreasonable an order that once was reasonable. *Id*. at ¶ 25.

## C. Special Expenses for the Daughter

{¶ 31} In his fourth assignment of error, Husband contends that the trial court's child support order was an abuse of discretion because the court did not consider the costs and expenses paid by Husband for the parties' daughter to play in the U.S. Kids Golf Tour. Husband contends that the court was "made fully aware" that the daughter played golf and that he had paid over $30,000 in expenses and fees for her golf over the last three years. Husband contends that the daughter will no longer be able to play in the Kids Tour because, due to the child support order, he can no longer afford to pay the fees and expenses.

{¶ 32} There is nothing in the record to support Husband's argument. There was no testimony whatsoever at trial demonstrating that the daughter played golf or that Husband paid expenses and fees associated with her golfing activity. Furthermore, despite Husband's assertion to this court that the trial court was "made fully aware" of his receipts showing expenses of over $30,000 for the daughter's golf, no such documentary evidence or receipts were introduced at trial. The trial court did not abuse its discretion in not considering evidence that was never presented, and the fourth assignment of error is overruled.

## D. Sale of the Marital Home

{¶ 33} In his fifth assignment of error, Husband contends that the trial court abused its discretion in ordering that the marital home be sold because bankruptcy law requires that a home not be sold during bankruptcy proceedings. We find no abuse of discretion in the trial court's order. There was no evidence whatsoever at

trial that either party had filed or was even contemplating filing for bankruptcy. Thus, the trial court did not erroneously order that the house be sold during the pendency of a bankruptcy proceeding. The fifth assignment of error is overruled.

### E. The Value of the Marital Home

{¶ 34} Husband next contends that the trial court erred in determining the value of the marital home because the trial court did not consider that he made the mortgage payments and paid all expenses associated with the home after Wife moved out in 2019.

{¶ 35} The value of the home was determined by the appraisal completed by James P. Rosenblatt (Wife's exhibit No. 28), to which Husband stipulated. Rather than disputing the value of the home, Husband apparently disagrees with the trial court's judgment that the home should be sold and the proceeds divided equally between the parties.

{¶ 36} Despite Husband's assertion that the sale order was an abuse of discretion because the trial court did not consider that he made the mortgage payments after Wife moved out, the trial court's judgment entry reflects that the court did indeed consider Husband's mortgage payments. Specifically, the trial court stated that "[s]ince July 2019, [Husband] has lived in the marital home and paid all expenses associated with the marital home." Nevertheless, the court found that "although [Husband] made an estimated thirty (30) payments towards the mortgage of the home since [Wife] departed from the residence, the proceeds of the

sale of the home shall be split evenly between the parties." We find no abuse of discretion in the court's order.

{¶ 37} Husband's argument ignores the fact that the court ordered the net proceeds of the sale to be divided equally between the parties. Additionally, the court specifically found that its division of the parties' property, although not equal, was equitable in light of Husband's liquidation during the divorce proceedings of an IRA account with a balance of over $23,000, in direct violation of the trial court's restraining order, and the $8,000 of debt Husband incurred in 2018 related to his domestic violence charge involving Wife. A trial court has broad discretion in a divorce proceeding to fashion an award that compensates a spouse for the financial misconduct of the other spouse. *Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, at ¶ 51.

{¶ 38} The sixth assignment of error is therefore overruled.

### F. Alleged Misconduct by the Judge and Guardian Ad Litem

{¶ 39} Although difficult to discern, it appears that in his seventh assignment of error, Husband contends that during the divorce proceedings, the domestic relations judge and guardian ad litem ("GAL") attempted to use his poor financial situation to force him to give up his children and allow Wife to take them to Texas. Husband cites to nothing in the record to support this scurrilous accusation. Absent specific references to the record, we need not consider unsubstantiated assertions. *See* App.R. 12(A)(2). Moreover, upon our review of the

record, we find nothing whatsoever to support this argument and thus, summarily overrule the assignment of error.

### G. Various Issues

{¶ 40} Husband next contends that the trial court denied him "fair and effective representation" because although the judge knew he did not have money to hire a lawyer, the judge told him that he could not take money from his retirement account to hire a lawyer. Husband also contends that the lawyer he eventually hired told him that the trial judge "is not listening to anything you say" and refused to consider "detailed documents," including bank statements and credit card statements, that he provided to the court. He further contends that Wife "hid details" and "provided meaningless balance statements" such that the court "actually knew zero about each of the credit cards," despite assigning the majority of the debt to him.

{¶ 41} Husband does not cite to portions of the record where these alleged errors are reflected, as required by App.R. 16(A)(3). Absent specific references to the record, we need not consider unsubstantiated assertions and are within our authority to summarily overrule Husband's assignment of error. App.R. 12(A)(2); *Univ. Hts. v. Johanan*, 8th Dist. Cuyahoga No. 110887, 2022-Ohio-2578, ¶ 10, citing *State v. Fisher*, 8th Dist. Cuyahoga No. 83098, 2004-Ohio-3123, ¶ 26; *Marietta College v. Valiante*, 4th Dist. Washington No. 13CA12, 2013-Ohio-5405, ¶ 12.

{¶ 42} Moreover, with respect to his alleged conversation with his lawyer, Husband relies on facts that are outside the record and thus cannot form the basis

for review. *State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 91, citing *State v. Wittine,* 8th Dist. Cuyahoga No. 90747, 2008-Ohio-5745, ¶ 4. Furthermore, the trial court's mutual restraining order issued on November 12, 2019, after the divorce complaint was filed, enjoined both Husband and Wife from "[v]oluntarily liquidating, encumbering, borrowing against, [or] cashing in * * * any retirement or pension plan or program that provides any benefit to a spouse or child(ren) of the parties and/or of either or both spouses." Thus, the trial court correctly advised Husband that he could not withdraw funds from his retirement plan during the pendency of the divorce proceedings. Finally, the record is clear that Husband did not submit any bank statement or credit card statements to the court; only Wife provided financial records to the court and Husband raised no objection at trial to the accuracy of the records. The eighth assignment of error is therefore overruled.

### H. The Mental Health of the Parties and Minor Children

{¶ 43} In his ninth assignment of error, Husband contends that the trial court abused its discretion when rendering its decision because the court did not consider the mental health of the parties or their minor children. Husband's argument is without merit.

{¶ 44} R.C. 3109.04 requires a trial court in a divorce proceeding to consider a child's best interest when determining the allocation of parental rights and responsibilities. R.C. 3109.04(F)(1)(e) identifies the mental health of the parents and child as a factor in making that decision.

{¶ 45} The trial court was not required to determine the allocation of parental rights and responsibilities in this case because Husband and Wife entered into an agreed shared parenting plan. Thus, R.C. 3109.04(F)(1)(e) does not apply. Furthermore, our review of the record demonstrates that neither Husband nor Wife raised any issue whatsoever during the case regarding either the parents' or the children's mental health. Accordingly, the trial court did not abuse its discretion in not considering an issue that was never raised. The ninth assignment of error is overruled.

## I. GAL Fees

{¶ 46} In his tenth assignment of error, Husband contends that the trial court erred in ordering him to pay additional fees for the GAL because he paid the initial $750 fee. He also contends that the GAL "provided zero value" and thus his charged fees were fraudulent.

{¶ 47} The total GAL fee was $3,960. The trial court found that Wife had paid $1,185 toward the fee and Husband had paid $750. The court ordered Wife to pay an additional $795 for a total payment of $1,980, which is half of the $3,960 total GAL fee. The court ordered Husband to pay an additional $1,230, which would bring his total payments for the GAL to $1,980, his half of the total $3,960 fee.

{¶ 48} Significantly, Husband did not object to the GAL's motion for fees, which was filed on February 4, 2022, and set forth his itemized statement of fees, including the hours he spent on the case and his hourly rate of pay. The motion also

listed the payments made by the parties, specifically noting that Father had paid $750 to date and Wife had paid $1,185.

{¶ 49} It is well settled that a litigant's failure to raise an issue in the trial court waives his right to raise that issue on appeal. *Perk v. Tomorrows Home Solutions, L.L.C.*, 8th Cuyahoga No. 104270, 2016-Ohio-7784, ¶ 8. An appellate court may nevertheless recognize waived error if it rises to the level of plain error. *Black v. Hicks*, 8th Dist. Cuyahoga No. 108958, 2020-Ohio-3976, ¶ 64. However, the plain error doctrine is not favored and should be applied only in exceptional circumstances where error to which no objection was made at trial seriously affects the basic fairness, integrity, or legitimacy of the judicial process. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), at the syllabus.

{¶ 50} Because he did not object to the GAL's motion, Husband waived any objection on appeal to the GAL's fees, including any argument that the GAL provided no value and overbilled. Furthermore, this case is not the extremely rare case involving exceptional circumstances to which the plain error doctrine should be applied. The GAL's fees were reasonable in light of the hours he expended on the case and it was not an abuse of discretion for the trial court to require Husband and Wife to share those fees equally. The tenth assignment of error is therefore overruled.

### J. Alleged Fraud by Wife

{¶ 51} In his eleventh assignment of error, Husband asserts that Wife committed fraud when she testified that she had made a complete disclosure to the

court of all her assets, debts, and bank account information. Husband contends that Wife's testimony was fraudulent because she did not disclose that she "has been depositing money into her Frost Bank, San Antonio, Texas account since 2019."

{¶ 52} Although Husband cites to Wife's testimony that she had disclosed all of her assets and debts to the court, he does not cite to any portion of the record demonstrating that Wife has an account with Frost Bank and has deposited funds there. Our review of the record demonstrates there was no testimony that Wife has an account with Frost Bank and no exhibits were introduced regarding the alleged account. Accordingly, Husband's argument relies on facts that are outside the record and that therefore cannot form the basis for review. *Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, at ¶ 91, citing *Wittine,* 8th Dist. Cuyahoga No. 90747, 2008-ohio-5745, at ¶ 4. Furthermore, Husband raised no objection at trial to Wife's testimony about the accuracy of her disclosures and thus has waived any argument that she did not fully disclose her bank accounts. The eleventh assignment of error is overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

LISA B. FORBES, J., and
MARY J. BOYLE, J., CONCUR